```
 1                      UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF NEW YORK
 2

 3    -----------------------------------------X
                                               :
 4    RODRIGO VILLENA SANCHEZ, et al.,         : 17-CV-00455 (AJN)
                                               :
 5                     Plaintiffs,             :
                                               :
 6              v.                             :
                                               : 500 Pearl Street
 7    DPC NEW YORK, INC., et al.,              : New York, New York
                                               :
 8                     Defendants.             : January 24, 2019
      -----------------------------------------X
 9

10       TRANSCRIPT OF CIVIL CAUSE FOR SETTLEMENT CONFERENCE
              BEFORE THE HONORABLE STEWART D. AARON
11                 UNITED STATES MAGISTRATE JUDGE

12

13    APPEARANCES:

14    For the Plaintiffs:      PAUL HERSHAN, ESQ.
                               Michael Faillace and Associates
15                             60 East 42nd Street, Suite 4510
                               New York, New York 10165
16
      For DPC and Pepe:        MICHAEL M. RABINOWITZ, ESQ.
17                             Rabinowitz, Galina & Rosen
                               94 Willis Avenue
18                             Mineola, New York 11357

19


20

21    Court Transcriber:       MARY GRECO
                               TypeWrite Word Processing Service
22                             211 N. Milton Road
                               Saratoga Springs, New York 12866
23

24

25


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

                                                                   2

1              THE CLERK:  In the matter of Rodrigo Villena
2    Sanchez, et al v. DPC New York Inc., et al, docket number 17-
3    CV-455.
4              Counsel, please state your appearance for the
5    record.
6              MR. HERSHAN:  For the plaintiffs, Paul Hershan from
7    Michael Faillace and Associates.  Good afternoon, Your Honor.
8              MR. RABINOWITZ:  Michael Rabinowitz of Rabinowitz
9    Galina & Rosen for the DPC and Pepe defendants.
10             MR. VERNER:  Paul Verner; Verner Simon, third party
11   defendant Andr Services and Mr. Andrade.  I'm sorry for my
12   appearance late, Your Honor.
13             THE COURT:  Please be seated.  So I am starting,
14   just so the parties are aware, on the record, and at some
15   point we may go off the record.  I've been provided by defense
16   counsel with two affidavits, one from Wilson Rodrigo Villena
17   Sanchez, and one from Gustavo Galarza.  Both of them are
18   present in the court?
19             MR. HERSHAN:  They are, Your Honor.
20             THE COURT:  Had these affidavits been provided to
21   plaintiff's counsel?
22             MR. HERSHAN:  Yes they have, Your Honor.
23             THE COURT:  Okay.  For the record, what these
24   documents appear to say is that these clients, Mr. Sanchez and
25   Mr. Galarza, wish to settle this case for 24,000 and 25,000

1 respectively.  I guess let me first ask Mr. Sanchez, could you
2 stand please?  Who's translating?
3          THE INTERPRETER:  I am.
4          THE COURT:  And you're from the Faillace firm are
5 you?  Okay, so I have one of the clerks here is a fluent
6 Spanish speaker, so if you could speak up I just want to be
7 sure that we're all on the same page.  So my question for Mr.
8 Sanchez, have you seen the affidavit that the Court's been
9 provided?
10         MR. SANCHEZ:  Yes.
11         THE COURT:  And do you read English?
12         MR. SANCHEZ:  Si, a little, 50 percent.
13         THE COURT:  50 percent.  So did you understand what
14 you wrote?
15         THE INTERPRETER:  He said that he read it prior to
16 signing it.
17         THE COURT:  Okay.  And do you wish to settle this
18 case for $24,000?
19         MR. SANCHEZ:  Yes.
20         THE COURT:  Okay.  And I'm going to be filing these
21 on the docket, on the ECF docket, so that Judge Nathan has
22 them.  Thank you, Mr. Sanchez.  You can sit down.
23         Mr. Galarza?
24         MR. GALARZA:  Yes.
25         THE COURT:  I have an affidavit from you.  Have you

4

seen the affidavit as well?

    MR. GALARZA:  Yes, I did.

    THE COURT:  And you signed it?

    MR. GALARZA:  Yes.

    THE COURT:  And do you wish to settle this case for $25,000?

    MR. GALARZA:  Yes.

    THE COURT:  Okay.  So I do want to get into the circumstances surrounding these affidavits, right, which I will in a minute.  Please be seated.

    So let me first ask Mr. Hershan why the Court shouldn't enter a settlement for Mr. Sanchez in the amount of 24,000, and for Mr. Galarza in the amount of 25,000.  I understand based upon these affidavits, and defense counsel will tell me, that they are prepared to pay whatever legal fees the Court awards on top of those amounts.  So that these plaintiffs are going to get these sums of money, is that right?

    MR. RABINOWITZ:  That was the arrangement, Your Honor.

    THE COURT:  Okay.  So Mr. Hershan, let me hear from you please.

    MR. HERSHAN:  I've had the opportunity to speak with my clients about these affidavits.  It was certainly not my intention to stand in the way of any settlement.  So at this

1  point I don't object to settling those, their two claims
2  against these defendants for those figures.  Obviously of
3  course as you mentioned subject to our attorneys fees.
4          THE COURT:  Okay.  So a couple of other questions.
5  So first of all, let me understand how these affidavits came
6  about, please.  And just identify yourself for the record.
7          MR. RABINOWITZ:  Yes, I'm Mike Rabinowitz, attorney
8  for the DPC defendants.  Since this case started we've always
9  had, not us directly, we've been advised by our clients that
10 these two individuals always wanted to settle.  If you go back
11 to the beginning of this case with one of plaintiff's prior
12 counsel they actually set the settlement agreement for them in
13 the case.  For some reason after we agreed upon it, it was
14 never resolved, so --
15         THE COURT:  And when you say prior counsel can you
16 please explain what you mean.
17         MR. RABINOWITZ:  Someone else who worked with the
18 Faillace firm.
19         THE COURT:  And who was that?
20         MR. RABINOWITZ:  That was --
21         MR. HERSHAN:  It was my understanding, Judge, I
22 believe it was Marisol Santos.
23         MR. RABINOWITZ:  Marisol Santos, that's correct.
24         THE COURT:  Okay.
25         MR. RABINOWITZ:  Marisol Santos, I believe, Judge.

1          THE COURT:  Okay.
2          MR. RABINOWITZ:  So we proceeded through discovery,
3   and all through discovery I have heard from Mr. Andrade, who I
4   speak to directly with permission of his counsel.  And he's
5   always indicated they wanted to settle.  So several months ago
6   when that was dated I received a call from Mr. Pepe and Mr.
7   Andrade, and they both indicated that they wanted to settle,
8   their counsel was standing in the way, could we draft
9   something.  And I said look, I can draft something, I can have
10  no involvement with signing this.  I drafted the affidavits.
11  I sent them to Mr. Pepe and Mr. Andrade and they were returned
12  to us signed.  And that's the circumstances, Your Honor.
13         THE COURT:  Okay.  So Mr. Hershan, is it true that
14  your office essentially stood in the way and tried to stop
15  these clients from settling?
16         MR. HERSHAN:  Your Honor, I can't speak to that.
17  And frankly, I'm not sure what the circumstances were between
18  my office and our clients prior to me coming onto the case.  I
19  can tell you I've spoken to these two individuals.  I
20  certainly want to do what's in their best interest.  I
21  explained to them candidly that I thought look, you know, they
22  may have handicapped themselves by negotiating directly with
23  defendants, but the last thing that I'll do is stand in the
24  way if they want to resolve these claims.  I do think at the
25  end of the day these are -- they are fair terms to resolve

1  these matters, and I will not stand in the way of executing
2  the settlement.  I don't think -- I take defense counsel at
3  its word.  I don't think there's been an end run around with
4  the intent of Cheeks; however, I would have wished to
5  negotiate this like I said directly with defense counsel, but
6  I'm not gonna stand in the way of this settlement, Judge.
7             THE COURT:  Who was the lawyer that was involved in
8  the mediation, Mr. Rabinowitz, on behalf of the plaintiffs?
9             MR. RABINOWITZ:  Yes, that was his boss Mr.
10 Faillace.  He came to the mediation.
11            THE COURT:  Okay.  And what, if anything, did you
12 observe with respect to Mr. Faillace and the settlement that
13 these clients, his clients wanted to enter into?
14            MR. RABINOWITZ:  Okay.  Well first thing I'll say, I
15 want to make it clear, plaintiff's current counsel had nothing
16 to do with that --
17            THE COURT:  Understood.
18            MR. RABINOWITZ:  I've had no issue with him.  He's
19 been totally up front and I don't want any aspirations placed
20 on him, I have no issue with him.  I've been doing this,
21 Judge, for a long time, the mediation was held with Mr.
22 Eiseman of Goetz Fitzpatrick who you know and is a very
23 experienced attorney.  I have never seen in my 34 years of
24 practice what I saw.
25            THE COURT:  And what did you see?

8

1  MR. RABINOWITZ:  We, the three of us, four of us
2 were sitting in a room, we made an offer.  Mr. Faillace
3 proceeded to go into -- I'm sorry, Mr. Eiseman proceeded to go
4 into the room, convey the offer to Mr. Faillace, and I cannot
5 speak, I will not say out loud what transpired after.  It was
6 a barrage of four letter words, and Mr. Andrade translated for
7 me.  And basically the translation was that this is my case.
8 I will decide what it is, you have no say in this, this is my
9 money.  Is that fair?
10  THE COURT:  Mr. Andrade, you speak Spanish do you?
11  MR. ANDRADE:  [Inaudible] as well, Your Honor.
12  THE COURT:  Yes, sorry.  You're bilingual?
13  MR. ANDRADE:  Yes.
14  THE COURT:  And you heard Mr. Faillace's
15 conversation with his clients?
16  MR. ANDRADE:  Yes, Your Honor.
17  THE COURT:  And --
18  MR. RABINOWITZ:  Judge, it was through a wall.  We
19 were in a conference room.  He was screaming at the top of his
20 lungs.
21  THE COURT:  And what is it that Mr. Faillace said
22 that you heard?  And please talk into the microphone.
23  MR. ANDRADE:  Basically what he said was that he
24 won't allow them to settle on their own because, you know, he
25 wanted a different number.  And he, you know, was yelling and

9

1  screaming and stating what we just said, that they won't allow
2  to do that because, you know, he had some number in his mind I
3  guess and he won't allow to do less than that.
4          MR. RABINOWITZ:  And just to be clear, was he
5  cursing at them?
6          MR. ANDRADE:  Oh yeah, loud.
7          THE COURT:  So he was cursing at them?
8          MR. ANDRADE:  I guess, yes, that they were the ones
9  left in the room while we were in the next door, room.  And
10 there was Mr. Faillace, if I pronounce it well, his last name,
11 and the mediator which I don't remember his last name.
12         THE COURT:  Okay.  Mr. Sanchez, is that what
13 happened?  I don't want to know what he said to you.  Did your
14 lawyer curse at you?  Again I don't want, can you tell him I
15 do not want him to tell me the words that were said.  All I
16 want to know is whether his attorney cursed at him.  It's a
17 yes or no question.
18         MR. SANCHEZ:  Yes.
19         THE COURT:  And Mr. Galarza?
20         MR: GALARZA:  Yes.
21         THE COURT:  Did Mr. Faillace curse at you as well?
22         MR. GALARZA:  No.
23         THE COURT:  He did not?  Okay.
24         MR. GALARZA:  No because I understand this.
25         THE COURT:  Say it again.

1           MR. GALARZA:  I understand English.  I understand
2   Spanish.  Never tried to do like this.  Maybe against -- to
3   other people I against was not in the meeting room.
4           THE COURT:  Oh, you weren't in the room?
5           MR. GALARZA:  Yeah, I wasn't in the meeting.
6           THE COURT:  Understood.  So Mr. Sanchez, who else
7   was in the meeting room with you when Mr. Faillace was
8   cursing?
9           MR. SANCHEZ:  I guess Mr. Luna, and Marisol who was
10  the other attorney.
11          THE COURT:  Mr. Luna and Mr. Marisol.  And Mr. Luna
12  is the other defendant?  Excuse me, the other plaintiff?
13          THE INTERPRETER:  I'm sorry, he was referring to
14  Marisol Santos who was the other attorney.
15          THE COURT:  Not Mr. Luna?
16          THE INTERPRETER:  Oh, and Mr. Luna.
17          THE COURT:  Okay.  All right, well a copy of this
18  transcript will be provided to the district judge, and I quite
19  frankly need to consider what other steps, if any, I need to
20  take with respect to what's gone on here.  But for present
21  purposes, as I said, I'm going to enter these affidavits on
22  the ECF system, Mr. Sanchez's affidavit and Mr. Galarza's
23  affidavit.  I'll ask my deputy to do that.  I'm going to
24  obviously accept the settlements of Mr. Sanchez and Mr.
25  Galarza in the amounts set forth, and I would expect to the

11

1    extent that the Faillace firm is seeking attorneys fees in
2    connection with those settlements it will make an appropriate
3    application to Judge Nathan who, as the parties are aware,
4    needs to do a Cheeks review in any event.
5            MR. HERSHAN:  Judge, if I can just briefly state
6    just since we're on the record.
7            THE COURT:  Yes.
8            MR. HERSHAN:  Again, I wasn't there so I can't speak
9    to what happened that day.  All I can tell you is in my
10   conversations with Mr. Faillace as it relates to this matter
11   he's consistently expressed to me that we should effectuate
12   whatever these two individuals want vis-à-vis settlement.
13   That's been a clear message from him as long as I've been on
14   this matter, Judge.
15           THE COURT:  And how long have you been on the
16   matter?
17           MR. HERSHAN:  This matter was assigned to me roughly
18   six months ago.
19           THE COURT:  It was assigned to you six months ago.
20           MR. HERSHAN:  It might have been earlier.
21           THE COURT:  And when was the mediation?
22           MR. VERNER:  May 5th, Your Honor.
23           THE COURT:  So you came on after the mediation?
24           MR. HERSHAN:  That's correct.
25           THE COURT:  And you replaced Ms. Santos?

12

1       MR. HERSHAN:  That's right, Your Honor.
2       THE COURT:  And where is Ms. Santos presently?
3       MR. HERSHAN:  She's left the firm, Judge.
4       THE COURT:  Okay.  All right.  So what we'll do now
5  is go off the record.  Well let me first ask this, am I
6  correct that no settlement in principle or otherwise has been
7  reached with Mr. Luna?
8       MR. RABINOWITZ:  That's correct, Your Honor.
9       THE COURT:  Okay.  So as I indicated, I will report
10 to Judge Nathan that a settlement has been reached with
11 plaintiff Sanchez and plaintiff Galarza in the amounts
12 indicated in the affidavits, and she will I'm sure enter an
13 order asking for the parties to submit the appropriate
14 paperwork in order to effectuate the Cheeks review.  And what
15 we'll do now is we'll go off the record and have a settlement
16 conference in connection with Mr. Luna's claims.
17      We're taking a break from the settlement conference
18 that we're in because plaintiff's counsel, Mr. Hershan, wanted
19 to state something for the record.
20      MR. HERSHAN:  I just briefly wanted to address what
21 Mr. Sanchez stated on the record previously.  I just wanted to
22 fortify the record.  Just to be clear, Mr. Sanchez was also --
23 voluntarily appeared at our offices today and we all arrived
24 at this settlement conference together.  In speaking with Mr.
25 Luna it appears there might have been a misunderstanding about

1  to the extent that there was any cursing at the last
2  mediation.  Again, I wasn't there, but Mr. Luna tells me that
3  was not directed at any of the plaintiffs in this matter.  I'm
4  just trying to put that to rest or address it to the best of
5  my abilities.  I'll leave it that.
6          THE COURT:  Well as you said, Mr. Sanchez is no
7  longer here.  So your statement's been made, so we're going to
8  conclude that record and then we're going to go on the record
9  in a separate recording to address the settlement reached with
10 Mr. Luna.
11                       [Off the record.]
12         THE CLERK:  In the matter of <u>Wilson Rodrigo Villena</u>
13 <u>Sanchez, et al v. DPC New York Inc., et al</u>, docket number 17-
14 CV-455.  Counsel, please state your appearance for the record.
15         MR. HERSHAN:  Paul Hershan for Mr. Luna.
16         MR. RABINOWITZ:  Michael Rabinowitz for Rabinowitz
17 Galina & Rosen for the DPC defendants.
18         MR. VERNER:  Paul Verner; Verner Simon, for Andr
19 Services and Mr. Andrade.
20         THE COURT:  The Court held a settlement conference
21 this afternoon with the plaintiff, Andres Luna, and his
22 counsel as well as counsel for the defendants and counsel
23 representing the third-party defendants.  And a settlement has
24 been reached on the following terms.
25         Defendant shall pay to Mr. Luna the sum of 75,000 in

1  full and final settlement of all of his claims.  Defendants
2  will pay in addition to the $75,000 the attorneys fees
3  attributable to their settlement with Mr. Luna in an amount to
4  be determined by the Court.  Do I have the agreement of
5  plaintiff's counsel to the terms of that settlement?
6           MR. HERSHAN:  Agreement to the extent that we will
7  be requesting a typical third of the gross sum which would be
8  $112,500.
9           THE COURT:  You're going to be requesting that of
10 Judge Nathan?
11          MR. HERSHAN:  Very well.
12          THE COURT:  Mr. Luna, do you agree to the terms of
13 the settlement?
14          THE INTERPRETER:  Yes, he agrees.
15          THE COURT:  Okay.  The defendants agree to the terms
16 of the settlement?
17                  [Pause in proceedings.]
18          MR. RABINOWITZ:  Yes, we agree.
19          THE COURT:  Very well.  Anything else the parties
20 would like to raise?
21          MR. HERSHAN:  Not at this time, Judge.
22          THE COURT:  Anything from --
23          MR. RABINOWITZ:  Well, the only thing I would want
24 to put on the record is that plaintiff's counsel prepare a
25 settlement agreement and that it will be forwarded, then we'll

15

1  set a date to present to the district judge.
2           THE COURT:  Yes, so the way that these things
3  typically proceed is I'll advise Judge Nathan that a
4  settlement's been reached.  You can expect her chambers in due
5  course to issue an order, and I know counsel are familiar with
6  them, saying what's required to be submitted which is a
7  settlement agreement as well as the retainer agreement as well
8  as the hours breakdown.
9           MR. HERSHAN:  Very well.
10          THE COURT:  Okay.  Very well this matter's
11 adjourned.
12          MR. RABINOWITZ:  Thank you.
13                         * * * * * *
14
15
16
17
18
19
20
21
22
23
24
25

16

1    I certify that the foregoing is a court transcript from
2    an electronic sound recording of the proceedings in the above-
3    entitled matter.
4
                                    *Mary Greco*
5                                   _____
6                                         Mary Greco
7    Dated:  January 28, 2019