USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/3/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rodrigo Villena Sanchez et al.,

                    Plaintiffs,

-against-

DPC New York Inc. et al,

                    Defendants.

1:17-cv-00455 (AJN) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

This case, which contains claims under the Fair Labor Standards Act ("FLSA"), is before me on the parties' joint application to approve the settlement. (5/28/19 Faillace Ltr., ECF No. 100.) All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c). (Consent, ECF No. 91.) As set forth below, the settlement is approved and the Court awards to Plaintiffs' counsel $8,123.50 in attorneys' fees and costs.

**BACKGROUND**

Plaintiffs Wilson Rodrigo Villena Sanchez ("Sanchez"), Gustavo Galarza ("Galarza") and Andres Luna ("Luna") (collectively, "Plaintiffs") allege that they were employed at various times by a construction company doing business under the name DP Consulting that was owned and operated by Defendants DPC New York Inc., DP Consulting Corp., Thomas Pepe and Christopher Pepe (collectively, "Defendants"). (Compl., ECF No. 1, ¶¶ 1-4.) Plaintiffs, who assert both FLSA and New York Labor Law ("NYLL") claims, allege that Defendants failed to pay them minimum wage, overtime pay and spread-of-hours pay throughout their employment. (5/28/19 Faillace Ltr. at 1.) Defendants denied the material allegations of the Complaint (Answer, ECF No. 13, ¶¶

108-25), and asserted as defenses that "[o]ne or more Plaintiffs was a manager and/or supervisor and not an employee and thus not eligible for overtime," and that "[o]ne or more of the Plaintiffs was not employed by any of the Defendants named herein." (*Id.* ¶¶ 126-27.)

Plaintiffs Sanchez and Galarza reached a settlement in principle with Defendants in mid-April 2017. (5/25/17 Santos Ltr., ECF No. 19.) At an initial pretrial conference in this case held before District Judge Alison J. Nathan on May 12, 2017, Marisol Santos ("Santos"), who was then an associate at Michael Faillace & Associates, P.C. ("Faillace Firm"),[1] advised the Court that Plaintiffs Sanchez and Galarza no longer wished to continue the case and that Santos anticipated filing settlement papers over the coming week. (*See id.*; 6/7/17 Order, ECF No. 20.) However, according to Santos, Sanchez and Galarza later changed their minds, and the case continued. (*Id.*)[2]

In October 2017, Defendants filed a Third Party Complaint against ANDR Services Group Inc. ("ANDR") and Marcelo Andrade ("Andrade") (collectively, "Third Party Defendants") alleging that "Plaintiffs or some of the Plaintiffs" were employees of the Third Party Defendants, and not employees of the Defendants. (Third Party Complaint, ECF No. 33, ¶ 9.) Although a signature on behalf of Third Party Defendant ANDR appears on one of the signature pages of the Settlement Agreement, the Third Party Defendants are not listed as parties to the Settlement Agreement. (*See* 5/28/19 Faillace Ltr., Ex. A, ECF No. 100-1, at 1 of 16 and 5 of 16.)[3]

---

[1] Santos left the Faillace Firm on April 5, 2108, and her motion to withdraw as counsel in this case was granted that day. (Endorsement on Motion to Withdraw, ECF No. 51.)

[2] Defendants made a motion to compel Sanchez and Galarza to adhere to the settlement, but Judge Nathan denied that motion since no binding agreement had been reached. (*See* 6/7/17 Order.)

[3] There also is attached to the Settlement Agreement an Affidavit of Confession of Judgment signed by Third Party Defendant Andrade, but such Affidavit states that, in the event of non-payment under the

A mediation was held in this case on May 2, 2018, which was unsuccessful. (5/4/18 Rabinowitz Ltr., ECF No. 55.) However, what occurred during that mediation is relevant to the Faillace Firm's application for attorneys' fees in this case. As explained below, Michael Faillace ("Faillace") refused to permit Sanchez and Galarza to settle, despite their desire to do so.

Prior to a settlement conference before me on January 24, 2019, affidavits were provided to me that were signed by Sanchez and Galarza in which they stated that they wanted to settle their claims, but that their attorney did not permit them to do so.[4] (Sanchez Aff., ECF No. 82, ¶ 3 ("My attorney refuses to allow me to settle the claim and he keeps telling me that he will decide the amount of the settlement and that I have no say in settling this matter."); Galarza Aff., ECF No. 83, ¶ 3 (same).) At the January 24, 2019 conference,[5] both Sanchez and Galarza advised me that they signed the affidavits and that they wished to settle for the amounts stated (*i.e.*, $24,000 for Sanchez and $25,000 for Galarza, both exclusive of attorneys' fees). (1/24/19 Tr. at 3-4.)

During the January 24, 2019 conference, I learned that the attorney to whom Sanchez and Galarza referred in their affidavits was Faillace and that, during the May 2, 2018 mediation,

---

Settlement Agreement, a judgment shall be entered "against me, Christopher Pepe." (See ECF No. 100-1 at 15 of 16 and 16 of 16.)

[4] The affidavits had been drafted by defense counsel after he learned from Third Party Defendant Andrade that Sanchez and Galarza wanted to settle, but were not being permitted by Faillace to do so. Rabinowitz sent the affidavits to Andrade and his client, Thomas Pepe, but told them he could have no involvement with getting them signed. The affidavits later were returned to Rabinowitz signed. (1/24/19 Tr., ECF No. 87, at 6.)

[5] Representing Plaintiffs at the January 24, 2019 conference was Paul Hershan ("Hershan"), an associate from the Faillace Firm who replaced Santos on this case in August 2018. (1/24/19 Tr. at 11-12; Notice of Appearance, ECF No. 64.) Faillace himself did not attend the January 24, 2019 conference.

3

Andrade (who is a Spanish speaker) overheard Faillace stating in Spanish that Faillace would decide the amount of the settlement and that he would not allow his clients to settle.[6] (*See* 1/24/19 Tr. at 7-10.)

At the January 24, 2019 conference, after accepting the settlements reached by Sanchez and Galarza on the terms reflected in their affidavits, I held a settlement conference regarding Luna's claims. That day, a settlement was reached of Luna's claims in the amount of $75,000, exclusive of attorneys' fees. (1/24/19 Tr. at 13-14.)

The Settlement Agreement submitted to me for approval was executed by Plaintiffs Sanchez, Galarza and Luna on May 29, 2019. (*See* Settlement Agmt., ECF No. 100-1 at 4 of 16.) The joint letter to the Court in support of the Settlement Agreement is dated May 28, 2019, but was filed on May 29, 2019. (5/28/19 Faillace Ltr. at 1.)

**ANALYSIS**

**I.      Approval of the Settlement Agreement**

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." *Johnson v. Brennan*, No. 10-CV-04712, 2011 WL 4357376. at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id*. (citation omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the

---

[6] Faillace could be heard through an adjacent conference room wall since he was speaking so loudly. (1/24/19 Tr. at 8.)

4

reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

Having reviewed the proposed settlement, the Court finds that it is fair and reasonable. Although the settlement represents a payment to Plaintiffs of only 19% of their maximum possible recovery, it avoids the serious risks of litigation that the three Plaintiffs faced, including as to whether the Defendants actually qualified as their employers under the FLSA. *See Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016) (settlement amount is fair "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement"). Thus, I approve the settlement.

## II. **Plaintiffs' Attorneys' Fees**

The FLSA and NYLL each provide that a successful plaintiff can recover his or her reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(1). Even where a plaintiff agrees to a settlement, counsel still is entitled to his or her fees. *Kahlil v. Original Old Homestead Rest.*, Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009).

Plaintiffs were represented in this case by various attorneys from the Faillace Firm. Pursuant to the terms of the Settlement Agreement, the parties agreed to the Court making a reasonable attorneys' fee determination separate and apart from the settlement amounts awarded to Plaintiffs. (*See* Settlement Agmt. at 2 ("Attorneys' fees and costs will be determined as a later date by the court.").) However, in their joint letter, it is stated that "Defendants' counsel has agreed to pay Plaintiffs' counsel $12,500 on top of the $124,000 payable to Plaintiffs in this matter." (5/28/19 Faillace Ltr. at 3.) The Court thus must determine whether the $12,500 sought in attorneys' fees is reasonable.

Whether an attorneys' fee award is reasonable is within the discretion of the court. *Black v. Nunwood, Inc.*, No. 13-CV-07207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015) (collecting cases). Traditionally, in FLSA settlement cases, attorneys' fees are awarded under the "percentage of the fund" method and one-third of the total settlement is normally considered a reasonable fee. *See Zhong v. Rockledge Bus Tour Inc.*, 18-CV-00454 (RA), 2018 WL 3733951 at *4 (S.D.N.Y. Aug. 6, 2018) ("one-third of the net settlement amount . . . is an amount routinely approved under the percentage method"); *Coleman v. DeFranco Pharmacy, Inc.*, No. 17-CV-08340 (HBP), 2018 WL 3650017 at *3 (S.D.N.Y. Aug. 1, 2018) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

However, when the parties to a FLSA action agree to a separate attorneys' fee determination that is independent of a Plaintiff's settlement amount, courts utilize the "lodestar" method, *i.e.*, "the product of a reasonable hourly rate and the reasonable number of hours required by the case," to determine a presumptively reasonable attorneys' fee award. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Siegel v. Bloomberg L.P.*, No. 13-CV-01351 (DF), 2016 WL 1211849 at *4 (S.D.N.Y. Mar. 22, 2016) (lodestar method utilized where parties reached FLSA settlement in principle and counsel submitted separate attorneys' fee application); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 9 (S.D.N.Y. 2015) (same).

The lodestar method is applied as follows:

> To determine the reasonable hourly rate, the Court's analysis is guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." . . . Generally, the relevant community is the district in which the district court sits. . . . The Court is to evaluate the "evidence proffered by the parties" and may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." . . .

> In making its determination, the Court "examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." . . . A court-awarded attorneys' fee must compensate only for "hours reasonably expended on the litigation," not for "hours that are excessive, redundant, or otherwise unnecessary." . . . If the number of hours recorded by counsel is disproportionate to the work performed, the Court should reduce the stated hours in making its fee award. . . .
>
> Finally, the determination of fees "should not result in a second major litigation." . . . "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." . . .

*Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588, *aff'd sub nom. Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-CV-2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018), *aff'd*, No. 18-2108, 2019 WL 2288330 (2d Cir. May 29, 2019) (citations omitted).

Plaintiffs' counsel submitted the required contemporaneous time records in support of the fee application. *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (all applications for attorneys' fees must be supported by contemporaneous time records); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (application for attorneys' fees must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done"). According to the contemporaneous time records submitted by the Faillace Firm, it spent 38.33 hours litigating the case and incurred $12,688 in attorneys' fees. (Billing Records, ECF No. 100-3.) The Faillace Firm argues that, because their claimed lodestar amount equals $12,688, their request for $12,500 is a reasonable award. (*See* 5/28/19 Faillace Ltr. at 3.) I find the Faillace Firm's lodestar calculation

to be inflated with respect to both the requested hourly rates and the number of hours, as set forth below.

The Faillace Firm's billing records reflect that it is seeking fees on behalf of three attorneys, Faillace (initials "MF"), Santos (initials "MS") and Hershan (initials "PH"). (Billing Records at 1-4.)[7] Although the joint letter does not disclose the hourly rate at which Faillace's time was billed, the entries in the billing records for "MF" reflect an hourly rate of $450. (*See* Billing Records at 1-2.) In the context of this case, I join "many others in the circuit in finding Mr. Faillace's hourly rate excessive," *Gervacio v. ARJ Laundry Servs. Inc*., No. 17-CV-9632 (AJN), 2019 WL 330631, at *2 (S.D.N.Y. Jan. 25, 2019) (citing cases), and reduce his hourly rate to $400.

The hourly rate for Santos is listed in the joint letter as $350. (5/28/19 Faillace Ltr. at 4.) However, the billing records reflect that Santos was billed at an hourly rate of $200 in 2017, as well as for one day in 2018. (*See* Billing Records at 1-3.)[8] The Court finds the $200 hourly rate billed for Santos to be reasonable.

Although the joint letter does not disclose the hourly rate at which Hershan's time was billed, the entries in the billing records for "PH" reflect an hourly rate of $350. (*See* Billing Records at 3-4.) The Court finds that this hourly rate is excessive. Hershan graduated from Fordham Law School in 2012, and Santos graduated in 2013. (5/28/19 Faillace Ltr. at 4.) However, Santos

---

[7] The joint letter contains a biography for Jesse Barton ("Barton"), an associate at the Faillace Firm (5/28/19 Faillace Ltr. at 4), but the billing records contain no time entries for Barton. (*See* Billing Records at 1-4.) Also, the billing records contain entries for a timekeeper with the initials "PL" (*see id*. at 3), but no biographical information is provided for that individual, and the Court declines to award any legal fees attributable to those entries. *See Flores v. Mamma Lombardi's of Holbrook, Inc*., 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) ("biographical information concerning the attorneys for whom charges were submitted [] is required to evaluate experience levels").

[8] There are two inconsistent days in March 2018 where Santos was billed at hourly rates of $250 and $350. (*See* Billing Records at 2.)

8

"cultivated a specialization in employment law" following law school, whereas Hershan primarily practiced in the area of criminal defense before joining the Faillace Firm in May 2018. (*Id*.) Thus, the Court finds that Hershan's hourly rate should be the same as Santos's hourly rate, *i.e.*, $200.

Upon my careful review of the contemporaneous billing records, I find a significant number of hours to be excessive or otherwise unnecessary. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (excessive hours should be excluded from attorney fee awards); *Andrews v. City of New York*, 118 F. Supp. 3d 630, 638 (S.D.N.Y. 2015) ("The court is obligated to exclude hours that are excessive, redundant, or otherwise unnecessary." (internal quotation marks and citations omitted)). There are multiple time entries for Faillace where he had internal discussions with Santos and Hershan about the case, where there are no corresponding entries from Santos or Hershan. (*See* Billing Records at 1-3 ("discussed case with MS"; "discussed case with PH").) The Court excludes these entries from its fee award. *See Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 509 (S.D.N.Y. 2012) (finding time billed for internal meetings between attorneys assigned to case to be excessive).

More significantly, Faillace acted improperly in not permitting two of his three clients, Sanchez and Galarza, to settle at the mediation that was held in April 2018. Rule 1.2(a) of the New York Rules of Professional Conduct provides: "A lawyer shall abide by a client's decision whether to settle a matter." N.Y. Rules Prof'l Conduct R. 1.2(a). The Court will not include as part of the fee award the 2.4 hours billed by Faillace for the mediation. Moreover, if Sanchez and Galarza had been permitted to settle, then many of the hours billed from May 2018 up to and including the January 2019 settlement conference would not have been necessary. I am reducing

the hours spent by Hershan during that period by two-thirds (representing a share of time attributable to Sanchez and Galarza).

Finally, the Court will not include as part of the fee award the 1.25 hours billed by Hershan in meeting with Faillace and Luna on January 30, 2019, after the case already had settled. (*See* Billing Records at 3.)

In view of all the foregoing, I find that the following number of hours billed by the Faillace Firm lawyers to be reasonable: Faillace, 10.7 hours; Santos, 11.1 hours; and Hershan, 4.6 hours. Multiplying the reasonable hourly rates set forth above for these attorneys, yields an attorney fee award in the amount of $7,420.[9] The reimbursable costs set forth on the billing records are $703.50. Therefore, I award Plaintiffs' counsel $8,123.50 in attorneys' fees and costs.

## **CONCLUSION**

For all the foregoing reasons, I approve the settlement in this case and award Plaintiffs' counsel $8,123.50 in attorneys' fees and costs. The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:  New York, New York
        June 3, 2019

*Stewart D. Aaron*
_____
STEWART D. AARON
United States Magistrate Judge

---

[9] 10.7 x $400 (Faillace) + 15.7 x $200 (Santos and Hershan) = $7,420.